## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES MILLER, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT FOR** |
| JUNIPER NETWORKS, INC., RAMI RAHIM, | ) **VIOLATIONS OF THE** |
| ANNE DELSANTO, KEVIN DENUCCIO, | ) **FEDERAL SECURITIES LAWS** |
| JAMES DOLCE, STEVEN FERNANDEZ, | ) |
| CHRISTINE GORJANC, JANET HAUGEN, | ) JURY TRIAL DEMANDED |
| SCOTT KRIENS, RAHUL MERCHANT, and | ) |
| WILLIAM STENSRUD, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff James Miller ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Juniper Networks, Inc. ("Juniper" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Hewlett Packard Enterprise Company ("HPE").[1]

2.      On January 9, 2024, Juniper entered into an Agreement and Plan of Merger (the

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

"Merger Agreement") with HPE and HPE's wholly owned subsidiary, Jasmine Acquisition Sub, Inc.  The Merger Agreement provides that HPE will acquire Juniper, with each share of Juniper common stock being converted into the right to receive $40.00 in cash.

3.      The Company's corporate directors subsequently authorized the February 26, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for April 2, 2024.

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.       Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

<u>**THE PARTIES**</u>

9.       Plaintiff is, and is has been at all times relevant hereto, the owner of Juniper common stock.

10.       Defendant Juniper is a Delaware corporation with its principal executive offices located at 1133 Innovation Way, Sunnyvale, California 94089.  Juniper's shares trade on the New York Stock Exchange under the ticker symbol "JNPR."  Juniper touts itself as delivering reliable and secure networking technology to its customers, including network operators, telecommunication and cloud providers, enterprise information technology ("IT") teams, lines of businesses and network users such as individual devices, machines, applications, microservices and data stores.  Businesses use the Company's solutions to access the internet and digital services, and the Company's networks support their mission critical tasks.  Juniper's Artificial Intelligence ("AI") native enterprise networking operations ("AIOps") software-as-a-service ("SaaS") platform leverages data and automation to enable reliable, predictable, measurable user experience and superior performance for operators by simplifying deployment and day-to-day operations across the entire network.

11.     Defendant Rami Rahim is and has been Chief Executive Officer and a director of the Company at all times relevant hereto.

12.     Defendant Anne DelSanto is and has been a director of the Company at all times relevant hereto.

13.     Defendant Kevin DeNuccio is and has been a director of the Company at all times relevant hereto.

14.     Defendant James Dolce is and has been a director of the Company at all times relevant hereto.

15.     Defendant Steven Fernandez is and has been a director of the Company at all times relevant hereto.

16.     Defendant Christine Gorjanc is and has been a director of the Company at all times relevant hereto.

17.     Defendant Janet Haugen is and has been a director of the Company at all times relevant hereto.

18.     Defendant Scott Kriens has been Chairman of the Board and a director of the Company at all times relevant hereto.

19.     Defendant Rahul Merchant is and has been a director of the Company at all times relevant hereto.

20.     Defendant William Stensrud is and has been a director of the Company at all times relevant hereto.

21.     Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **The Proposed Transaction**

22.     On January 9, 2024, HPE and the Company jointly announced in relevant part:

HOUSTON, Texas and SUNNYVALE, California – January 9, 2024 – Hewlett Packard Enterprise (NYSE: HPE) and Juniper Networks, Inc. (NYSE: JNPR), a leader in AI-native networks, today announced that the companies have entered a definitive agreement under which HPE will acquire Juniper in an all-cash transaction for $40.00 per share, representing an equity value of approximately $14 billion.

The combination of HPE and Juniper advances HPE's portfolio mix shift toward higher-growth solutions and strengthens its high-margin networking business, accelerating HPE's sustainable profitable growth strategy.  The transaction is expected to be accretive to non-GAAP EPS and free cash flow in the first year post close.

The acquisition is expected to double HPE's networking business, creating a new networking leader with a comprehensive portfolio that presents customers and partners with a compelling new choice to drive business value.  The explosion of AI and hybrid cloud-driven business is accelerating demand for secure, unified technology solutions that connect, protect, and analyze companies' data from edge to cloud.  These trends, and AI specifically, will continue to be the most disruptive workloads for companies, and HPE has been aligning its portfolio to capitalize on these substantial IT trends with networking as a critical connective component.

Combining HPE and Juniper's complementary portfolios supercharges HPE's edge-to-cloud strategy with an ability to lead in an AI-native environment based on a foundational cloud-native architecture. Together, HPE and Juniper will provide customers of all sizes with a complete, secure portfolio that enables the networking architecture necessary to manage and simplify their expanding and increasingly complex connectivity needs. Leveraging industry-leading AI, the combined company is expected to create better user and operator experiences, benefitting customers' high-performance networks and cloud data centers.

Through its suite of cloud-delivered networking solutions, software, and services including the Mist AI and Cloud platform, Juniper helps organizations securely and efficiently access the mission-critical cloud infrastructure that serves as the foundation of digital and AI strategies.  The combination with HPE Aruba Networking and purposely designed HPE AI interconnect fabric will bring together enterprise reach, and cloud-native and AI-native management

5

and control, to create a premier industry player that will accelerate innovation to deliver further modernized networking optimized for hybrid cloud and AI.

Upon completion of the transaction, Juniper CEO Rami Rahim will lead the combined HPE networking business, reporting to HPE President and CEO Antonio Neri.

"HPE's acquisition of Juniper represents an important inflection point in the industry and will change the dynamics in the networking market and provide customers and partners with a new alternative that meets their toughest demands," said Neri.  "This transaction will strengthen HPE's position at the nexus of accelerating macro-AI trends, expand our total addressable market, and drive further innovation for customers as we help bridge the AI-native and cloud-native worlds, while also generating significant value for shareholders.  I am excited to welcome Juniper's talented employees to our team as we bring together two companies with complementary portfolios and proven track records of driving innovation within the industry."

"Our multi-year focus on innovative secure AI-native solutions has driven Juniper Networks' outstanding performance," said Rami Rahim, CEO of Juniper Networks.  "We have successfully delivered exceptional user experiences and simplified operations, and by joining HPE, I believe we can accelerate the next phase of our journey.  In addition, this combination maximizes value for our shareholders through a meaningful all-cash premium.  We look forward to working with the talented HPE team to drive innovation for enterprise, service provider and cloud customers across all domains, including campus, branch, data center and the wide area network."

*** 

**Transaction Details and Approvals**

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of HPE and Juniper, Juniper shareholders will receive $40.00 per share in cash upon the completion of the transaction.  The purchase price represents a premium of approximately 32% to the unaffected closing price of Juniper's common stock on January 8, 2024, the last full trading day prior to media reports regarding a possible transaction.

The transaction is expected to be funded based on financing commitments for $14 billion in term loans.  Such financing will ultimately be replaced, in part, with a combination of new debt, mandatory convertible preferred securities, and cash on the balance sheet.  The transaction is currently expected to close in late calendar year 2024 or early calendar year 2025, subject to receipt of regulatory

approvals, approval of the transaction by Juniper shareholders, and satisfaction of other customary closing conditions.

The combination is expected to achieve operating efficiencies and run-rate annual cost synergies of $450 million within 36 months post close. Strong growth in free cash flow, along with maintenance of capital allocation policies, are expected to provide sufficient room to reduce leverage to approximately 2x in two years post close. Following the completion of the transaction, HPE will continue its innovation and go-to-market investments in its networking business, one of its growth engines.

**Advisors**

J.P. Morgan Securities LLC and Qatalyst Partners are serving as HPE's financial advisors. Committed financing for the transaction has been provided by Citigroup Global Markets Inc., JPMorgan Chase Bank, N.A. and Mizuho Bank, Ltd. Wachtell, Lipton, Rosen & Katz, Covington & Burling LLP, and Freshfields Bruckhaus Deringer LLP are serving as legal counsel. Goldman Sachs & Co. LLC is serving as Juniper's exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom is serving as legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

23.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on February 2024. The Proxy Statement, which recommends that Juniper stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Juniper; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); (c) potential conflicts of interest faced by Goldman Sachs; and (d) the background of the Proposed Transaction.

***Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts***

24.     The Proxy Statement fails to disclose material information concerning the Company's financial forecasts.

25.   By way of background, during an August 8, 2023, Board meeting, the participants discussed:

> an update with respect to Juniper's year to date performance against preliminary projections of Juniper's financial results for fiscal years 2023 through 2025 (the "Annual Projections") and reflected in updated financial scenarios for fiscal years 2023 through 2025 prepared by Juniper management as part of its ordinary course strategy planning process (the "Financial Projections"). The Annual Projections were previously reviewed by the Board of Directors as part of Juniper's ordinary course strategy and business planning process at a meeting of the Board of Directors on November 9, 2022 and subsequently updated and reviewed with the Board of Directors at a meeting of the Board of Directors on February 9, 2023.[3]

26.   Thereafter, at an August 29, 2023, Board meeting, the Company's Executive Vice President and Chief Financial Officer, Kenneth Miller, reviewed with the Board:

> two financial scenarios with respect to Juniper's 2023 – 2028 fiscal years, one of which being the Management Projections, reflecting the Financial Projections, as described in the section "*The Merger-Reasons for the Merger*" and the other a more conservative scenario based on assumptions closer to consensus Wall Street estimates. Both scenarios were based on the Financial Projections provided to the Board of Directors at the August 8, 2023 meeting, but extended for three additional fiscal years from 2026 to 2028.[4]

At the same meeting, Mr. Miller also reviewed "a financial scenario based on consensus Wall Street estimates out to 2025."[5]

27.   Notwithstanding the foregoing, the Proxy Statement fails to disclose: (a) the Company's "Annual Projections" reviewed at the November 9, 2022 Board meeting; (b) the updates made to the "Annual Projections" reviewed at the February 9, 2023 Board meeting; (c) the Company's "Financial Projections" including the "updated financial scenarios" included

---

[3] Proxy Statement at 38.

[4] *Id.* at 39.

[5] *Id.*

therein reviewed at the August 8, 2023 Board meeting; (d) any changes made to the "Financial Projections" to arrive at the "Management Projections;" (e) the conservative scenario based on assumptions closer to Wall Street estimates extended to fiscal year 2028; and (f) the scenario based on Wall Street estimates to fiscal year 2025.

28.     As to the Company's "Management Projections," the Proxy Statement fails to disclose the line items underlying: (a) EBITDA; (b) Unlevered Free Cash Flow; and (c) Unlevered Free Cash Flow less SBC.

**Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Goldman Sachs**

29.     The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Goldman Sachs.

30.     As to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose: (a) Juniper's terminal values; (b) its total debt and debt-like items as of September 30, 2023; (c) the Company's cash and cash equivalents and short-term investments as of September 30, 2023; and (d) its fully diluted outstanding shares.

31.     As to the *Illustrative Present Value of Future Share Price Analysis* performed by Goldman, the Proxy Statement fails to disclose: (a) the Company's non-GAAP earnings per share for each of fiscal years 2025 and 2026; and (b) the cumulative dividends per share of Juniper common stock expected to be paid to Juniper stockholders through the end of each of fiscal years 2024 and 2025.

32.     As to the *Selected Transactions Analysis* performed by Goldman, the Proxy Statement fails to disclose: (a) the respective multiples and financial metrics for each transaction; (b) the Company's net debt as of September 30, 2023; and (c) its fully diluted outstanding shares.

33.     As to the *Selected Public Company Comparables Analysis* performed by Goldman, the Proxy Statement fails to disclose the respective multiples and financial metrics for each company.

34.     As to the *Premia Paid Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose the respective transactions and their corresponding premia observed by the financial advisor.

***Material Misrepresentations and/or Omissions Concerning Potential Conflicts of Interest Affecting Goldman Sachs***

35.     The Proxy Statement fails to disclose potential conflicts of interest affecting Goldman, including whether any the fees Goldman Sachs has received or expects to receive in connection with any prior services it has performed for HPE.[6]

***Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction***

36.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, including the details of all acquisition proposals received by the Company.[7]

37.     The omission of the above-referenced information renders statements in the "Management Projections," "Opinion of Goldman Sachs & Co." and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[6] *See* Proxy Statement at 59.

[7] *See id.* at 36.  These details include, without limitation: (a) the terms of the proposals received; (b) the dates the proposals were received; and (c) whether any parties who submitted a proposal to acquire the Company is currently subject to a confidentiality agreement that includes a "don't ask, don't waive" standstill provision that operates to preclude that party from submitting a topping bid for the Company.

38.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Juniper**

39.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Juniper is liable as the issuer of these statements.

41.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

45.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Juniper within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Juniper and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

51.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  March 13, 2024     **LONG LAW, LLC**

       By: */s/ Brian D. Long*
        Brian D. Long (#4347)
        3828 Kennett Pike, Suite 208
        Wilmington, DE 19807
        Telephone: (302) 729-9100
        Email: BDLong@LongLawDE.com

        *Attorneys for Plaintiff*